**INMON, Sheriff, et al. v. STATE OF MISSISSIPPI, to Use of Ivy.**

(Circuit Court of Appeals, Fifth Circuit. January 18, 1922.)

No. 3778.

1. **Appeal and error** ⬅997(3)—**Finding on cross-motions for directed verdict not reviewable, if supported by any evidence.**

Motions by both parties for a directed verdict on an issue amounts to a submission to the court of all questions of fact involved in that issue, and, if there is any evidence to sustain the court's finding, it must stand.

2. **False imprisonment** ⬅7(3)—**Officer not protected by warrant obtained at his instance.**

A sheriff is not protected from liability for an illegal arrest and imprisonment by a warrant issued on his own affidavit charging an offense which he knew the accused had not committed.

3. **False imprisonment** ⬅7(3)—**Sheriff acting on telegram held liable.**

A sheriff *held* liable for false imprisonment where, acting on a telegram from another state asking the arrest of a person named and described, he arrested and held plaintiff on a warrant obtained on his own affidavit, charging a fictitious crime in his own county, though plaintiff did not answer the description, and, while having the same surname, had a different given name, and where, though assured by plaintiff and his kinsmen, who were residents of the county, that plaintiff was not the man wanted, he neglected or refused to make any inquiry which would have disclosed that the fugitive was a different person.

In Error to the District Court of the United States for the Northern District of Mississippi; Edwin R. Holmes, Judge.

Action at law by the State of Mississippi, for the use of Walter Lee Ivy, against Will Inmon, Sheriff, and the surety on his bond. Judgment for plaintiff, and defendants bring error. Affirmed.

George T. Mitchell, of Tupelo, Miss., for plaintiffs in error.

J. W. P. Boggan, of Tupelo, Miss., and Thomas Fite Paine, of Aberdeen, Miss., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Walter Lee Ivy, a citizen of Arkansas, sued in the name of the state of Mississippi, for his use (as plaintiff), Will Inmon, a citizen of Mississippi, sheriff of Lee county, Miss., and the United States Fidelity & Guaranty Company, a corporation chartered under the laws, and a citizen, of Maryland, on his bond, as defendants, in the United States District Court of the Northern District of Mississippi, to recover damages for an alleged false imprisonment resulting from the arrest and detention by said sheriff of plaintiff. The facts averred were that said sheriff, on January 6, 1920, received a telegram from a Florida sheriff, asking him to arrest and hold one W. B. Ivey, who claimed to have been in the army and had with one Kirk Grieber stolen a Hudson automobile in Florida. The telegram described Ivey as a blond, with blue eyes, who was making his way to his father's, R. A. Ivey's, home at Verona, Miss. On January 7, 1920, the Florida sheriff telegraphed Inmon, sheriff, that he had recovered the car, but urged the capture and detention of W. B. Ivey, who was again stated to be on his way to his father's, R. A. Ivey, at Verona, Miss., accompanied by Grieber.

On January 14th, said Inmon appeared before a justice of the peace for Lee county, and made affidavit accusing one Walter Ivey with stealing a Hudson car belonging to one Glynn, in Lee county, Miss., and procured a warrant for the arrest of Walter Ivey for grand larceny. Said Inmon executed said warrant by arresting one Walter Lee Ivy, and informed him he was wanted for stealing a Hudson car in Florida. He took him to Tupelo, Miss., and detained him in jail from January 16th to January 18th, when he was released; the sheriff becoming convinced that he was not W. B. Ivey. Walter Lee Ivy then brought this suit against Inmon, as sheriff, and his surety on his official bond.

The facts were proven as above, with the addition that the plaintiff, Walter Lee Ivy, was born in Tennessee, and had lived in and around Verona for about 11 years; that he had then moved to Arkansas and had since lived there; his father was one J. F. Ivy, who had died in 1917; that since December 22, 1919, he had been visiting relatives near Verona, coming there from Arkansas; that, when arrested by the sheriff, he told him that his name was Walter Lee Ivy, that he was on a visit from Arkansas, and had never been in Florida, and had never been in the army.

It was also shown that there was a family of Iveys in the county, one of whom was a youth named Willie Dell Ivey, who enlisted in the army. He had a father named J. F. Ivey, living near Verona, Miss.;

his mother's name was R. A. Ivey. He was a blond, and the description in the testimony of his father answered to that given by the Florida sheriff in his telegram. When last heard of, he was in Florida, and had shipped thence a box of oranges to his mother as Mrs. R. A. Ivey. There was a conflict of evidence as to what transpired about the plaintiff, or his friends, asking if they could give bond.

The plaintiff described the incidents of his arrest, of his being taken to Tupelo, and of his imprisonment there. It was proved that, on the defendant sheriff advising plaintiff he could get a speedier hearing by agreeing to go to Florida without formal requisition, he agreed to do so. Inmon testified that he made no further effort to discover if the Ivey arrested was the party wanted, after he was informed by him that he was not and had never been in Florida.

On the conclusion of the testimony, each side moved the court to give a peremptory instruction to the jury on the issue of liability. After hearing argument, the court decided that the defendants were liable, and submitted to the jury the case on the question of actual damages under a charge to which no objection was taken in the presence of the jury. The jury found for the plaintiff, and assessed his damages at $1,800.

[1] As both parties moved for a peremptory instruction on the issue of liability, this amounted to a submission to the decision of the court of all questions of fact involved in this issue, and if there is any evidence to sustain the court's finding it must stand. Sena v. American Turquoise Co., 220 U. S. 497, 31 Sup. Ct. 488, 55 L. Ed. 559; Beuttell v. Magone, 157 U. S. 154, 15 Sup. Ct. 566, 39 L. Ed. 654.

So far as the arrest could have been made on the charge of stealing the automobile in Florida, it is quite manifest that the Walter Lee Ivy was not the W. B. Ivey against whom the proceedings in that state were instituted. There was such a person, who answered the description given by the Florida sheriff in his telegram, who was a blond with blue eyes, and who had been in the army, none of which characteristics fitted the Walter Lee Ivey arrested. West v. Cabell, 153 U. S. 78, 14 Sup. Ct. 752, 38 L. Ed. 643; Vice v. Holley, 88 Miss. 572, 574, 41 South. 7; Wolf v. Perryman, 82 Tex. 112, 123, 17 S. W. 772.

[2] The plaintiffs in error, however, contest their liability, upon the ground that the arrest of the plaintiff was under a warrant, issued by a justice of the peace of Lee county, Miss.; that the party for whose arrest that warrant was issued was the person arrested; that whether he was the party wanted in Florida, or not, he was the party intended in the Mississippi warrant; and that the sheriff was therefore justified in making such arrest under such warrant. The reply to this is that, while it is true as a general rule that, where an officer arrests under a warrant regular on its face, issued by an officer authorized to issue warrants for such an offense, the warrant protects the officer, the reason of the rule rests on the duty of the officer to execute such warrant, and on the fact that he is not responsible for the antecedent steps which have led to its issuance.

But here the arresting officer himself procured the warrant for an offense he knew had not been committed. He made the affidavit on which the warrant was based, charging the larceny of the automobile

as committed in Lee county, Miss., when he knew that the larceny of it was committed in Florida, and that the car had been recovered in Florida by the Florida sheriff. We think that, where an arresting officer himself procures on his own affidavit a warrant for an offense he knows has not been committed, he cannot justify an arrest of a person on such a warrant, because he has reason to consider him as having committed a similar offense in another state.

The rule that a sheriff is bound to execute process issued from a court having jurisdiction, regular on its face, applies as well in civil as in criminal proceedings. In a civil case the sheriff caused an execution to be issued for his fees, and thereunder levied on a wagon. He was sued for the conversion of the wagon, and justified under the above execution. It appeared that, when issued, the entire judgment had been paid off, and that the sheriff was using said execution to collect fees claimed by him in another cause. On these facts the court, while recognizing the general rule to be as above stated, held:

> "But this rule of 'process fair on its face' is one of protection merely, and personal to the officer himself, and affords him no shelter when he is the moving party in causing it to be wrongfully issued solely for his own benefit and where he knows the judgment upon which it is issued to have been paid and satisfied." Johnson v. Randall, 74 Minn. 44, 47, 76 N. W. 791.

An action for false imprisonment for arrest of a defendant on a ca. sa., issued on a judgment which had been paid, is maintainable against the parties. As to the levying officer it is held:

> "If a judgment or execution has been satisfied, and that fact does not appear upon the execution or of record, the officer who levies the execution a second time would undoubtedly be protected, if he had no knowledge of the first payment; for he is bound to execute all process, regular in its forms, which is delivered to him, and has ordinarily no means of determining whether an execution has been paid or not (Puisen v. Gale, 8 Vt. 511, 5 Wend. 240); and this, even if first paid to an officer. If the officer had knowledge, he would be liable; but notice when about to levy is not knowledge." Breck v. Blanchard, 20 N. H. 323, 331, 51 Am. Dec. 222.

In this case the officer arrested the plaintiff on a warrant procured by himself on an affidavit charging him with an offense committed in Lee county, Miss., which he knew had not been committed. We are of the opinion that process so obtained by the officer himself affords no justification to him for the arrest.

[3] There was evidence, also, from which the court in determining the question of the justification of this arrest could have found that the officer, Inmon, failed to exercise proper diligence in investigating the identity of the plaintiff with the party whom he was seeking to hold. There is no doubt that Inmon intended to hold the Ivey who had been in Florida and was charged with having there stolen an automobile. He swore out a warrant charging a Walter Ivey with such theft in Lee county, Miss., intending such warrant for the fugitive from Florida. While at the time he thought the plaintiff was such fugitive, he had no purpose of accusing any other person than the fugitive from Florida with the crime.

Some courts hold that a mistake of an officer in arresting the wrong person, where there are two persons of the same name, is at his peril,

regardless of his diligence or good faith. Ryburn v. Moore, 72 Tex. 85, 10 S. W. 393. The decisions more favorable to the officer hold:

"If there be two or more persons of the same name within the bailiwick, the officer may make diligent inquiry as to the identity of the person named in the warrant; and if he make such inquiry and arrests a person of that name in good faith, believing he is the person named in the warrant, the officer is also protected. * * * Good faith will protect the officer. Personal spite or a reckless disregard of the rights of others would amount to bad faith. But the officer may not be animated by spite, his conduct may not be reckless, and still bad faith may exist. Good faith implies due diligence. Good faith may be negatived by evidence of negligence. The failure to exercise ordinary care in a transaction like the one under consideration is inconsistent with good faith." Blocker v. Clark, Sheriff, 126 Ga. 484, 489, 490, 54 S. E. 1022, 7 L. R. A. (N. S.) 268, 8 Ann. Cas. 31.

Inmon admits that he made no further inquiry as to plaintiff's identity, when assured by the plaintiff and his kinsman that plaintiff was not the man he wanted. He had been telegraphed that the man he wanted was on his way to his father's, R. A. Ivey's. He was informed that the father of the plaintiff he was arresting was dead, and that his name had been J. F. Ivy. The plaintiff had a number of relatives accessible by whom his identity could have easily been established. The District Court may have concluded that proper diligence in this behalf would have informed Inmon in a short time that the criminal was another man. There is nothing in the record to indicate that the court did not correctly submit to the jury the question of damages, nor are any exceptions reserved to the charge of the court.

The judgment of the District Court is affirmed.